## WHEATON v. LIVERPOOL & LONDON & GLOBE INS. CO.

There is no error in refusing defendant a continuance for absence of associate counsel; defendant's attorney of record, who had participated actively in each of the two preceding trials and on the motions for new trial, which had been granted, and who was familiar with and competent to try the case, being present.

Declarations of an insurance agent, made while the policy sued on was still in his hands undelivered to insured, as to the reasons it was undelivered, are admissible as part of the res gestæ.

Testimony of the insurer's agent, in an action on a fire policy, as to the time he knew what the premium was, is immaterial; he having testified that he offered the policy for a certain premium.

The validity of an insurance policy, the premium on which was paid, is not affected by omission of a statement therein of the amount of the premium.

The question of the want of revenue stamps on an insurance policy, required by law when it was issued, cannot be raised in a state court.

Where a fire risk has been accepted by an insurance agent, the policy written out and signed, and the premium received, and the agent has represented to the property owner that he is insured, there is a binding contract of insurance, though the policy still remains in the hands of the agent.

A charge is the law of the case, in the absence of exceptions thereto.

A mortgagee of chattels to whom the mortgagor has given a bill of sale of the property, he to sell it, deduct the amount of the mortgage, pay other debts of the mortgagor, and give any balance to the mortgagor, being the legal owner and trustee of an express trust, may recover the full amount of an insurance policy taken out by him on the property, though it exceeds the amount of his mortgage.

Where an insurance agent issues a policy, accepts the premium, notifies the property owner that the policy has been issued, assures him that it is in force, and gives him no notice prior to loss that the insurer has rejected the risk, the insurer is liable.

(Opinion filed, Oct. 3, 1905.)

Appeal from Circuit Court, Lake County. Hon. JOSEPH W. JONES, Judge.

Action by A. H. Wheaton against the Liverpool & London & Globe Insurance Company. Judgment for plaintiff. Defendant appeals. Affirmed.

*Chas. J. Porter* and *Edson Rich,* for appellant. *Philo Hall* and *J. H. Williamson,* for respondent.

CORSON, J. This was an action by the plaintiff to recover of the defendant the sum of $1,500 upon an alleged insurance con-

tract.  Verdict and judgment being in favor of the plaintiff, the defendant has appealed from the judgment and order denying a new trial.

It is disclosed by the evidence in the case: That some time prior to July, 1900, one Absolum Bogstad purchased of the plaintiff a creamery building and machinery situated upon rented land, in Lake county.  That notes secured by a chattel mortgage on the building and machinery were given plaintiff to secure the same.  That Bogstad had placed insurance upon this property in the Westchester Insurance Company, through one Sheridan, an agent for such company and other companies, residing at Madison.  In July, 1900, Mr. Sheridan notified Mr. Bogstad that he had been directed by said Westchester Company to cancel the policy issued by said company on this machinery.  That on July 25th Bogstad still owed plaintiff $465 on this mortgage, and on that day Bogstad gave plaintiff a bill of sale of the whole plant, and they entered into a contract which provided for the running of the plant by the plaintiff, and authorizing him to sell the same and to pay himself out of the proceeds, pay some debts due from Bogstad, and to pay said Bogstad any balance that might remain in his hands over and above the amount so paid.  The bill of sale was filed in the register's office on that day, and in the evening they went to Mr. Sheridan's office to fix up the insurance.  Mr. Bogstad told Sheridan he had given plaintiff a bill of sale of the property, had turned it over to him, and he was going to run it.  The agent, Sheridan, suggested that under the new ownership of the property the Westchester Company might carry the risk, and the Westchester policy was then assigned to plaintiff.  The Westchester Company canceled their policy on August 11th, and Sheridan filled out a policy in the defendant company and sent a daily report to the company on that day, notifying the company of the fact.  By the cancellation of the Westchester policy, a certain amount of money had been returned to Sheridan to pay over to Bogstad, and this sum was assigned to the plaintiff in this action.  This amount so retained by the agent seems to have been sufficient to pay the premium on the $1,500 policy claimed to have been issued by him as agent of the defendant company, and has never been paid

over to the plaintiff. On August 13th Mr. Sheridan wrote the plaintiff the following letter: "Madison, S. D., Aug. 13, 1900. A. H. Wheaton, Esq., Prairie Queen. Dear Sir: The Westchester have canceled their policy on the creamery, and I have placed it in the Liverpool & London & Globe. To save any inconvenience in case they upon the investigation do not wish to carry it, I will hold the policy until approved. Yours truly, Elmer Sheridan." On August 15th the defendant company wrote the agent a letter canceling the policy. But so far as the record discloses the evidence is conflicting as to whether or not the contents of this letter was communicated to the plaintiff, and he tacitly approved the action of the agent in placing the risk with the London Company by making no objections thereto. There was a sharp conflict in the evidence as given by the plaintiff and the defendant in regard to the issuing of this policy; the agent testifying that he informed the plaintiff that the London Company had refused to take the risk, and that he had issued a policy to him in the Traders' Insurance Company. This was denied by the plaintiff, who testified that he never heard of the Traders' Insurance Company in connection with the transaction.

It is contended by the defendant that the policy made out by Sheridan was never in force, not having been delivered to the plaintiff and never having been approved by the home company, but, on the contrary, was expressly rejected by the company, and the agent was notified and requested to cancel the same. It is further contended by the defendant that the plaintiff could not in any event recover a sum greater than the amount of his claim against the creamery, which, we have seen, was $465. It is insisted, on the other hand, by the respondent, that the agent, Sheridan, was authorized to and did issue the policy in the London Company, and that, having made out the policy and received the pramium in effect by retaining the money in his hands returned by the Westchester Company, which by the assignment belonged to the plaintiff, and the plaintiff not being notified that the policy had been rejected by the London Company, that company was bound by the policy so issued by the agent. The respondent further contends that, ntowithstanding his own claim against the creamery was the amount above stated, he

was a trustee of an express trust in favor of Bogstad and his creditors for the balance of the $1,500, secured by the policy, and that he was therefore entitled to recover the full amount of the policy; the amount therein named being less than the value of the property destroyed by fire. While, as before stated, there was a sharp conflict in most of the evidence·on the part of the plaintiff and on the part of the defendant regarding what occurred at the various interviews between the plaintiff and the agent, and the same is very voluminous, no useful purpose would be served by reproducing it in this opinion, as the weight and credit to be given the evidence was a matter entirely for the jury; they being the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. We are of the opinion that if the jury believed the testimony of the plaintiff, as they clearly had a right to do, there was sufficient evidence to justify them in finding a verdict for the plaintiff. In cases tried to a jury this court will not ordinarily review the evidence for the purpose of determining its weight, but only to ascertain therefrom whether or not there was sufficient legal evidence to support the verdict. Jeansch v. Lewis et al., 1 S. D. 609, 48 N. W. 128.

It is contended by the appellant that the court erred in refusing to grant to the defendant a continuance upon the affidavits of its counsel; but, in denying this motion, we are of the opinion that the court committed no error. It appears from the record that there had been two previous trials in which motions for new trials had been granted, and that Mr. Porter, the counsel for the defendant, had participated in these trials and in the hearing of the motions, and was thoroughly conversant with all the facts in the case. The statement, therefore, made by counsel, that Edson Rich, Esq., associate counsel, was unable to be present, owing to the severe illness of his wife, did not constitute a sufficient ground for granting a continuance. The court, in denying the motion, very properly stated that Mr. Porter was an attorney of record for defendant, that he had participated actively in each of the two preceding trials of the case and upon motions for new trials ,and was familiar with and

competent to try the case. Certainly no one knowing Mr. Porter will question his ability to protect the rights of the defendant.

A reversal of the judgment was also sought for the reason that competent evidence was excluded and that incompetent evidence was admitted, and for the reason that the trial court erred in overruling the motion of the defendant that the court instruct the jury to return a verdict in its favor. It is contended by the appellant that the court erred in admitting the declarations of the agent, Sheridan, made on September 1st or 3d, on the ground that the transaction in regard to the policy had been closed and was not binding upon the defendant. This contention is clearly untenable, for the reason that the declarations of the agent introduced in evidence were made while the transaction was pending and before its conclusion. As will have been noticed, the policy had not been delivered to the plaintiff at that time, and the plaintiff in his testimony says: "I went down to Mr. Sheridan's office for the purpose of getting this policy * * * that he had written me about, and asked for the policy. * * * And Mr. Sheridan stated to me that the company had requested him to make a personal examination of this risk, * * * and that he had made such personal examination of them and made a favorable report, and that he was waiting for a reply and received none, and requested I leave the policy in his possession until he heard from them, which I did." It will thus be seen that the statements made by Sheridan were as to this undelivered policy, and it constituted a part of the res gestæ. While this court has held that declarations of an agent as to a business transaction which was concluded cannot be given in evidence as against his principal, it has always been careful to discriminate between statements as to transactions which were concluded and those constituting a part of the res gestæ. Clearly, so long as the policy was in the hands of the agent, undelivered to the plaintiff, any statement made by him as to the reasons the same was undelivered were competent.

It is further contended that the court errer in sustaining plaintiff's objection to the following question: "At that time did you know what the premium was?" The witness had testified: "I did not return the premium to Mr. Wheaton. I had what was left of

the Westchester premium. * * * Therefore there would be something like $12 or $13 to be deducted from the $72 by reason of the Westchester policy. That remainder was left in my hands. I testified that I offered this policy for $45, 3 per cent." The question then objected to was asked him, and the objection sustained. As the witness had testified that he offered the policy for $45, 3 per cent., it was nct material as to whether he knew what the premium was, and the ruling upon the motion sustaining plaintiff's objection to the question was clearly right; but it would not in any event, if erroneous, constitute reversible error.

It is further contended that the court erred in admitting in evidence the policy of insurance, which was objected to on the ground that the same was not completed and could not be made the basis of an action. It is contended by the defendant that the policy was not completed, for the reason that the amount of the premium was not filled in, and that it did not have the revenue stamps required by law at that time, and that it was never delivered, and the evidence showed that it was not in force. These objections to the introduction of the policy were clearly untenable. It had been shown that the premium had been paid, and the omission of a statement of the amount of the premium in the policy would not affect the validity of the policy. The question of the want of revenue stamps was not one that could be properly raised in a state court. Plunkett v. Hanschka, 14 S. D. 454, 85 N. W. 1004. It is true the policy had not been delivered to the plaintiff in person, but, as we have seen, he ·had been notified that the policy was being held by the agent merely for the purpose of making a further report to the company, and which report had been made; and it further appears, as we have seen, that there was evidence tending to prove that the agent had said that the policy was in force. If the jury found that the risk had been accepted by the agent, the policy written out and signed, and the premium received, and that the agent represented to the plaintiff that he was insured in the defendant company, they were justified in finding that there was a contract of insurance binding upon the defendant. Angell v. Insurance Co., 59 N. Y. 171; Zell v. Insurance Co. 44 N. W. 828; Ostrander on Fire Ins. pp. 10-19;

Sanborn v. Fireman's Ins. Co., 16 Gray, 448, 77 Am. Dec. 419; Newark Machine Co. v. Kenton Ins. Co., 50 Ohio St. 549, 35 N. E. 1060, 22 L. R. A. 768; Ellis v. Albany City F. Ins. Co., 50 N. Y. 402; 13 Am. & Eng. Ency. Law 218; Mathers v. Association, 78 Wis. 588, 47 N. W. 1130, 11 L. R. A. 83; McCabe v. Aetna Ins. Co., 9 N. D. 19, 81 N. W. 426, 47 L. R. A. 641. It may be further stated, as strengthening this position, that the court in its charge to the jury stated to them that if they found that the conversation occurred between the plaintiff and Sheridan on September 1st or 3d, wherein said agent told said plaintiff that he was insured in the defendant company by a policy issued by him which was in full force and effect, the company would be liable to plaintiff; otherwise not. No exception was taken to this charge, and it is therefore to be regarded as the law of the case.

At the close of the plaintiff's evidence the defendant requested the court to instruct the jury to direct a verdict in this case for the defendant, for the reason that the plaintiff had failed to make out any cause of action; that he had not proven the issuance of any policy to him; that the policy offered an received in evidence was not a complete policy; that the evidence was that plaintiff was not the sole and unconditional owner of said property, and was not such at the time the same was insured, and also shows that the said property was situated on leased real property, and not real property to which the plaintiff had title in fee; that the plaintiff had never authorized or instructed the agent of this company to place any insurance with the defendant company, and that, if such insurance was placed, it was done without his knowledge or consent, and that he never paid or consented to pay any money for premium for insurance to the defendant company; that before the plaintiff had any knowledge or information that this policy had been written it had been rejected by the defendant. Upon all of the grounds upon which the motion was made the evidence was conflicting, and the questions therein presented were all questions of facts for the jury, and the court therefore was right in denying the motion.

The only exception appearing to have been taken to the charge of the court was to that part of the charge in which the court instructed the jury that, "if you find in favor of the plaintiff, he will be entitled to recover the full amount of the policy ($1,500), with 7 per cent. interest from November 10, 1900." In the view we take of the case there was no error in this instruction. The plaintiff, as the legal owner of the property, although in fact he held portions of it in trust for Bogstad and his creditors, was under the circumstances a trustee of an express trust, and as such trustee, as well as legal owner, and having paid the premium for the full amount of the insurance, he was entitled to recover the full amount named in the policy. The defendant's agent at Madison seems to have been vested with the usual powers of an agent of a company, authorized to accept risks, fix the amount of the premium, and issue policies therefor in the name of the company. Assuming, therefore, as must have been found by the jury, that the agent had issued the policy, accepted in effect the premium therefor by retaining money in his hands belonging to the plaintiff, and having notified the plaintiff that the policy had been issued and assured him that the same was in force, and giving him no notice prior to the loss of the property that the defendant had rejected the risk, the company was bound by the act of its agent. The powers and duties of the class of insurance agents to which the agent transacting the business in this case seemed to belong was so fully discussed in the case of Vesey v. Assurance Co. 18 S. D. 632, 101 N. W. 1074, that a further discussion seems unnecessary. Assuming, therefore, that the jury believed the evidence on the part of the plaintiff, their verdict was fully justified by the same, as the defendant was bound by the acts of the agent in issuing the policy and in inducing the plaintiff to believe that he was insured in the defendant company, notwithstanding that company as a matter of fact had refused to accept the risk and directed their agent to cancel the policy.

The judgment of the court below, and order denying a new trial, are affirmed.