Valerio, Appellant, vs. Woodmen of the World, Respondent.

*May 4—July 13, 1921.*

*Insurance: Fraternal benefit associations: Authority of agents: Oral contract of insurance.*

Sec. 1977, Stats., providing, among other things, that whoever solicits insurance on behalf of an insurance company for a commission or other consideration shall be deemed the agent of the company to all intents and purposes, but that this shall not apply to agents of licensed fraternal beneficiary societies, and sub. 1 and 9, sec. 1956, defining fraternal benefit societies and excluding them·from the operation of statutes not expressly designating such societies, do not confer authority on an agent of a foreign fraternal benefit society to make an oral contract of present insurance prior to delivery of the written policy.  *McKnelly v. Brotherhood of American Yeomen,* 160 Wis. 514, followed.

Appeal from a judgment of the circuit court .for. Milwaukee county: John J. Gregory, Circuit Judge.   *Affirmed.*

The appeal is from a judgment reversing the judgment of the civil court of Milwaukee county.

The complaint, among other things, alleges in substance, and the evidence shows, that on June 7, 1919, the agent of the defendant represented to plaintiff's husband that upon the payment of a premium of $3 and monthly payments thereafter in the sum of $1.85 the company would insure him for the sum of $1,500, the insurance to be payable to the plaintiff in the event of death and to become effective on the date of the application. An application was then submitted to the husband of the plaintiff, which he signed, but which he did not and which he was unable to read, and which was not read to him. The $3 premium was paid at the time of the signing of the application. The husband, as a result of an injury received by accident, died on or about July 3, 1919, and shortly thereafter the agent who solicited the insurance called on the plaintiff and stated to her that the insurance was not effectual because her husband had not signed the policy. He also left on the dresser in the plaintiff's room the sum of $3, the amount paid by the husband at the time of the making of his application for insurance, which amount the plaintiff refused to accept.

The answer of the defendant admits the application for insurance, and alleges that the application provided for a beneficiary certificate in the defendant, a duly incorporated fraternal benefit association organized and existing under the laws of the state of Nebraska and duly licensed to transact business within the state of Wisconsin; that the husband submitted to a physical examination, and that the beneficiary certificate was accepted by the defendant on or about the 24th day of June, 1919; and that on June 27, 1919, the beneficiary certificate was issued to said husband of the plaintiff, wherein and whereby it was provided that if said plaintiff's husband, while in good standing, should die within one year after becoming entitled to participate in the beneficiary fund, said defendant would pay to the above named plaintiff the sum of $500; if her husband should die within two years

after becoming entitled to participate in said fund, the sum of $750; and that if such death should occur after the expiration of two years, then said defendant would pay to said plaintiff the sum of $1,000. That said certificate on its face provided and was issued subject to all the conditions indorsed thereon and of the constitution and by-laws of said defendant then existing and to all amendments which might thereafter be made thereto.

That the third provision indorsed on said certificate provided as follows:

"Third. There shall be no liability of the Sovereign Camp of the *Woodmen of the World* under this certificate until the member named herein shall have paid one entrance fee, one advance assessment or instalment of assessment of Sovereign Camp fund and camp general fund dues for the month, signed his beneficiary certificate and the acceptance slip attached thereto, paid the physician's fee for examination, been obligated or introduced by a camp or authorized deputy in due form and had manually delivered into his hands in person this benefit certificate while in good health. The foregoing provisions are hereby made a part of the consideration for, and are conditions precedent to, the payment of benefits under this certificate."

The answer further alleged that at the time of the application of plaintiff's husband as aforesaid, and at the time of the issuance of said certificate, there was in full force and effect a certain by-law duly adopted, published, and circulated among the membership of said defendant which provided as follows:

"Section 58. The liability of the Sovereign Camp for the payment of benefits on the death of a member shall not begin until after his application shall have been accepted by a sovereign physician, his certificate issued, and he shall have: 1. Paid all entrance fees. 2. Paid one or more advance annual assessments and dues or one or more advance monthly instalments of assessments and dues, known as Sovereign Camp fund; also signed his certificate and acceptance slip

attached thereto.    3. Paid the physician for medical examination.    4. Been obligated or introduced by a camp or by an authorized deputy in due form.    5. Had delivered to him, in person, his beneficiary certificate while in good health.

"The foregoing are hereby made a part of the consideration for, and are conditions precedent to, the liability for the payment of benefits in case of death."

The answer further alleges that plaintiff's husband has never paid all entrance fees; has not paid any advance annual assessments and dues or any monthly instalment of assessments and dues; that he has not signed said certificate nor the acceptance slip attached thereto; that he has not been obligated or introduced by a camp or an authorized deputy in due form; and that said certificate has never been delivered to said Henry Valerio in person; and that the undelivered certificate is in the possession, unsigned by said Valerio, of the defendant, with the unsigned acceptance slip thereunto attached.

The civil court found, among other things:

a. That the defendant is a foreign mutual life insurance corporation.

b. That on June 7, 1919, the agent of the defendant solicited insurance of the husband of the plaintiff, and stated to the plaintiff and agreed with the plaintiff that such insurance would commence at once, and that the husband of the plaintiff would be insured immediately upon the payment of $3 premium, and that such insurance would be for the sum of $1,500.

c. That the husband relied upon such representations made by defendant's agent, paid the premium, and agreed to take said insurance.

d. That plaintiff's husband was unable to read or write the English language; that he did not read the application; and that such application was not read to him.

e. That the insurance was payable to the plaintiff.

f. That the husband died on June 12, 1919.

g. That the defendant has failed and refused to pay the sum of $1,500 as insurance.

h. That the plaintiff refused to accept the return of $3 premium paid by her husband.

i. That there was a valid present contract of insurance on the life of the plaintiff's husband, of which the plaintiff was beneficiary.

j. That upon the death of the husband of the plaintiff the plaintiff became entitled to the sum of $1,500 upon said contract of insurance.

Thereupon the civil court ordered that judgment be entered in favor of the plaintiff and against the defendant for the sum of $1,500 and interest, etc., and judgment was thereupon accordingly entered and docketed in said civil court.

From such judgment of the civil court the defendant appealed to the circuit court, where, after a hearing upon the record of the cause transmitted by the civil to the circuit court, the judgment of the civil court was reversed and plaintiff's complaint dismissed, with costs.

The cause was submitted for the appellant on the brief of *Ray J. Cannon,* attorney, and *A. W. Richter,* of counsel, both of Milwaukee, and for the respondent on that of *Bloodgood, Kemper & Bloodgood,* attorneys, and *Albert K. Stebbins,* of counsel, all of Milwaukee.

DOERFLER, J. The evidence, in substance, sustains all the allegations as above set forth and contained in the answer of the defendant. It is clear from an examination of the record herein that the defendant at all times was and is a fraternal benefit society, and not, as found by the civil court, a foreign mutual life insurance corporation.

There was no contention made at the trial that the plaintiff's husband had prior to his death complied with the provisions of the constitution and by-laws of the defendant, a

compliance with which is made a condition precedent to the payment of any benefit under a certificate.

Plaintiff relies upon the decisions in the cases of *Northwestern Iron Co. v. Ætna Ins. Co.* 23 Wis. 160; *Strohn v. Hartford F. Ins. Co.* 33 Wis. 648; *Mathers v. Union Mut. Acc. Asso.* 78 Wis. 588, 47 N. W. 1130, and other cases, which hold that a valid parol agreement to insure may be made without delivery of a written policy, provided the terms are definitely fixed.

In *Northwestern Iron Co. v. Ætna Ins. Co.* 23 Wis. 160, it was held:

Such an "action might be sustained, providing it appeared that the agents of the company had authority to make the parol contract of insurance relied on. . . . If the agents of the company were fully authorized to make the contract set out in the complaint, we know of no satisfactory reason why a recovery may not be had upon it."

The *Northwestern Iron Company Case* was decided by this court in the year 1868, and in 1871 the legislature passed ch. 13 of the laws of said year, which among other things provided:

"Whoever solicits insurance on behalf of any fire, marine, inland, life or accident insurance company, or transmits for any person other than himself an application for insurance, or a policy of insurance, to or from said company, or advertises that he will receive or transmit the same, shall be held to be an agent of such company to all intents and purposes, unless it can be shown that he receives no commission or other compensation or consideration for such service."

The foregoing enactment was incorporated in the Revised Statutes of 1878 as sec. 1977, and also in S. & B. Ann. Stats. 1889 under the same section number.

In 1891, in the case of *Mathers v. Union Mut. Acc. Asso.* 78 Wis. 588, 47 N. W. 1130, the decision, among other things, contains the following language:

"The general and almost unlimited powers of all insur-

ance agents doing business in this state are sufficiently expressed in the statute.   Sec. 1977, R. S."

This section is then set forth in the terms as above stated, and the court thereupon continues in its decision, and says:

"The meaning of this language could not be made clearer by construction or comment.   All insurance companies understand that all of their agents doing business in this state are *general* agents, however restricted their powers may be by the rules of the companies, or by the stipulations or conditions of their policies or of the applications for insurance. The only act of the agent here that the company disclaims and repudiates is contracting for a *present* insurance."

And it was held in that case that an oral contract for present insurance, made by the agent of an accident association, is binding upon such association under the provisions of sec. 1977, R. S., as it then existed, although the application signed by the person to be insured contained a provision that the association should not be liable for any injury happening prior to the receipt and acceptance of the application and member's fee by the secretary and general manager, and the policy subsequently issued bore date two days later than the oral agreement.   It does not, however, appear from the report of the latter case whether the company was a fraternal benefit society.

In the year 1905 (ch. 353, Laws 1905) sec. 1977 was amended by adding at the end thereof the following:

"This section shall not apply to agents of licensed fraternal beneficiary societies, or mutual fire insurance companies of this state except those organized under section 1896, 1897 and 1898."

Ch. 216, Laws 1911, was thereupon enacted and was incorporated in our statutes as secs. 1956 and 1957.

Sub. 1, sec. 1956, Stats., provides:

"Any corporation, society, order, or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members or their beneficiaries, and

having a lodge system with ritualistic form of work and representative form of government, and which makes provision for the payment of death or disability benefits, or for both, is hereby declared to be a 'fraternal benefit society,' which shall be held to be synonymous with a 'mutual benefit society.' . . ."

Sub. 9, sec. 1956, provides:

"*Exemption from general laws.* Unless express reference is made to this subsection or unless expressly designated therein, no law now in force or hereafter enacted, shall apply to any fraternal benefit society or mutual benefit society."

It is correctly said in the learned decision of the circuit judge:

"There is no reference in sec. 1977 to sec. 1956. While one legislature cannot bind or control successive legislatures, laws amending, modifying, or limiting the scope of application of laws passed by a preceding legislature are valid. If sec. 1977, by its terms, contained no limitation whatever, it could not apply to fraternal benefit societies because of the language of sec. 1956. But sec. 1977 does contain a limitation. It specifically provides that 'this section shall not apply to agents of licensed beneficiary societies,' and there is no limitation to societies organized in this state, as claimed by the plaintiff."

This case is ruled by the case of *McKnelly v. Brotherhood of American Yeomen,* 160 Wis. 514, 152 N. W. 169. The Statutes of Kansas on the subject are substantially like our own and contain what is known as ch. 23 of the Laws of 1898, incorporated as a part of sec. 4303, Stats. 1909, and which provides as follows:

"Such association [meaning the fraternal benefit society] shall be governed by this act and shall be exempt from the provisions of other insurance laws of this state, and no law hereafter passed shall apply to them unless they be expressly designated therein."

Quoting the above statute, Mr. Chief Justice Winslow in the opinion of the court then says:

"Now, while one legislature cannot control its successors as to the manner in which they shall legislate, this provision

is nevertheless very significant as an indication of legislative policy, and its continued existence unrepealed is fairly persuasive proof that the policy there expressed has been and still is adhered to. Taken in connection with the clear indications on the face of the sections themselves, we are convinced that they were not intended to apply and do not apply to certificates issued by fraternal beneficiary societies."

*By the Court.*—The judgment of the circuit court is affirmed.